

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL CASE NO. 08- 217 |
|  | : |  |
| v. | : | VIOLATIONS: 18 U.S.C. § 2319B |
|  | : | (Unauthorized Recording of Motion |
| MICHAEL DWAYNE LOGAN, | : | Pictures in a Motion Picture |
|  | : | Exhibition Facility Criminal) |
|  | : |  |
| Defendant. | : |  |



## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the government, through its undersigned counsel, and Defendant Michael Dwayne Logan, stipulate and agree that, were this case proceed to trial, the United States would prove the following facts beyond a reasonable doubt:

### INTRODUCTION

1. The Motion Picture Association of America ("MPAA") is an industry trade group that represents motion picture, home video, and television industries including major producers and distributors of entertainment programming for public viewing in movie theaters, television, cable, and home video. The MPAA provides anti-piracy security protection for their members, which include Disney Enterprise Ltd. and 20th Century Fox.

2. As part of its ongoing anti-piracy motion picture protection efforts, the MPAA contracts with a company that places a watermark on each new motion picture prior to commercial distribution. Each unique watermark contains specific information identifying every reel of film, the theater authorized to display the motion picture, and the time period for which display is authorized at that theater. The watermarking process enables analysis of an unauthorized "pirated" copy of a motion picture from which can be determined the specific

theater location where the pirated copy was originally recorded and the time period for which the motion picture was shown at that particular theater.

## FACTS

3. On November 24, 2007, MPAA investigators conducted surveillance at the Regal Gallery Place Stadium 14, 701 7th Street, N.W., Washington, D.C.

4. At all times relevant to this case, Regal Gallery Place Stadium 14 was a motion picture exhibition facility which routinely exhibited new, first run movies that had not previously been available for public viewing or purchase.

5. On November 24, 2007, a 12:40 p.m. showing of the first run motion picture *Enchanted* was scheduled to take place in Theater 9 of the Regal Gallery Place Stadium 14. The Defendant was seated in the first seat of the last row of the theater directly at the top of the stairs. This seat provided an unobstructed view of the motion picture viewing screen. Defendant Logan was observed accepting a video camera from a female companion, preparing the camera to record the movie, and attempting to hide the camera when other patrons walked by. D.C. Metropolitan Police Department officers observed Defendant Logan actively recording *Enchanted*, as the camera rested on the armrest of defendant's theater seat.

6. Defendant Logan was approached by the officers and MPAA investigators. The video camera was confiscated. At that time, the lens of the recording device was facing the movie screen and was covered by a coat. The recording device was a JVC, Everio Model GZHD7U, High Definition Video Camera, which records moving and still images digitally on a 60 gigabyte internal hard drive.

7. A computer analysis of the camera's hard drive revealed that it contained approximately fifty minutes of the motion picture *Enchanted*.

8. Disney Enterprises, Inc. ("Disney") holds the copyright for the motion picture *Enchanted*. Disney never grants permission for individuals to record Disney motion pictures in a theater using video cameras. Disney did not grant the Defendant Logan permission to record any of its motion pictures, including *Enchanted*.

9. Forensic analysis of other pirated first run motion pictures acquired by MPAA revealed a pattern of activity establishing a connection between numerous pirated movies that had been reproduced and commercially distributed and Defendant Logan's recording of *Enchanted*. Common characteristics included one or more of the following traits: Defendant Logan's voice on the recording, Defendant Logan using a cell phone while recording the movie, the voice of one particular woman, a unique DVD menu structure, the use of a baseball cap to make the recording less obvious to others in the theater, the presence of air hole ringlets from the baseball cap which are visible on the illegal recordings, and the recording angle.

10. Information obtained during the course of the investigation revealed that a motion picture titled *28 Weeks Later* had its theatrical release at Regal Gallery Place Stadium 14 on May 11, 2007. Pirated copies of the motion picture were purchased by MPAA investigators in New York on May 11 and 15, 2007. Forensic analysis indicated that the pirated copies bore numerous forensic similarities to other motion pictures believed to have been illegally recorded by the defendant. These similarities include the presence of Defendant Logan's voice and the voice of a female conversing during the recording, the DVD menu structure, and the use of a baseball cap to conceal the recording device. These characteristics establish that Defendant Logan recorded the

motion picture *28 Weeks Later* in the same manner and at the same theater as he recorded the motion picture *Enchanted*.

11. 20th Century Fox holds the copyright for the motion picture *28 Weeks Later*. 20th Century Fox never grants permission for individuals to record 20th Century Fox motion pictures in a theater using video cameras. 20th Century Fox did not grant the defendant permission to record any of its motion pictures, including *28 Weeks Later*.

### Calculation of the Loss Amount

12. First run motion pictures are not available from legitimate sources for private purchase. The cost to a motion picture exhibition facility for the rights to exhibit a motion picture is a minimum of 50 percent of ticket sale gross receipts for the time period the motion picture is shown at the particular theater.

13. The agreed upon loss amount in this case is the "infringement amount"; the cost to Regal Gallery Place Stadium 14 for the right to display the motion picture *Enchanted* and the motion picture *28 Weeks Later* from Disney and Fox studios, respectively. Gross revenue for *Enchanted* at Regal Gallery Place Stadium 14 was $51,930.00. Gross revenue for *28 Weeks*

*Later* at the same theater was $45,334.00. Total revenue for the two films ($97,264.00) divided in half (50 percent) equals the price the theater paid the studios for the two films; $48,632.00.[1]

                    JEFFREY A. TAYLOR
                    United States Attorney
                    for the District of Columbia
                    D.C. Bar No. 498610

By: _____
      SHERRI L. SCHORNSTEIN
      Assistant U.S. Attorney
      D.C. Bar# 415219
      555 4th Street, NW
      Washington, D.C. 20530
      (202) 514-6956

_____
/JONATHAN W. HARAY
Assistant United States Attorney

_____
CLEMENT MCGOVERN
Trial Attorney
U.S. Department of Justice
Computer Hacking and Intellectual
  Property Section

    I declare under penalty of perjury that the foregoing is a true and accurate statement of facts and accurately sets forth a portion of my conduct in connection with this case.

_____
Michael Dwayne Logan,
Defendant

---

[1] Regal Gallery Place Stadium 14. <u>See</u> U.S.S.G. §2B5.3, Application Note 2(A), indicating that the infringement amount is the retail value of the infringed item.